## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil Action No. _____ |
| *ex rel*. [UNDER SEAL], | Hon. _____ |
| Plaintiff, | **QUI TAM COMPLAINT** |
| v. | |
| [UNDER SEAL], | **FILED UNDER SEAL** |
| | **UNDER 31 U.S.C. § 3730(b)(2)** |
| Defendant. | |
| | **JURY TRIAL DEMANDED** |

2023 SEP 29 P 1: 30

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

SHN\702075.1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, | Civil Action No. _____ |
| *ex rel.* SCISSORS LLC, | Hon. _____ |
| Plaintiff-Relator, | **QUI TAM COMPLAINT** |
| v. | **FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2)** |
| REMA TIP TOP OF AMERICA, INC., REMA TIP TOP/NORTH AMERICA, INC., C&J WELDING & CONSTRUCTION, LLC, NEXGEN INDUSTRIAL SERVICES, INC., and INDUSTRIAL SERVICES GROUP, INC. d/b/a UNIVERSAL BLASTCO, | **JURY TRIAL DEMANDED** |
| Defendants. | |

On behalf of the United States of America (the "United States" or the "Government"), Plaintiff and Relator Scissors LLC ("Relator") files this *qui tam* action against Defendants Rema Tip Top of America, Inc. ("Rema"); Rema Tip Top/North America, Inc. ("RNA"), C&J Welding & Construction, LLC. ("C&J"), NexGen Industrial Services, Inc. ("NexGen"), and Industrial Services Group, Inc. d/b/a Universal Blastco ("ISG") (C&J, NexGen, and ISG are collectively referred to as the "Corporate Defendants") (collectively "Defendants"), and alleges as follows:

**INTRODUCTION**

1.    This is an action to recover treble damages, civil penalties, and all other remedies on behalf of the United States of America in connection with Defendant's materially false and fraudulent applications to the Government for loans under the Paycheck Protection Program ("PPP") in violation of the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* (the "FCA").

2.     Pursuant to the FCA, Relator seeks to recover, on behalf of the United States of America, damages and civil penalties arising from false or fraudulent claims for payment that Defendants submitted or caused to be submitted to the Federal Government-funded and/or subsidized PPP loan programs.

## SUMMARY OF ALLEGATIONS

3.     Defendant Rema is a corporation specializing in automotive and industrial products organized under the law of Delaware.

4.     Defendant RNA is a corporation specializing in automotive and industrial products that is based in Woodcliff Lake, New Jersey.

5.     Defendant C&J is a welding company that is based in Carmichaels, Pennsylvania.

6.     Defendant NexGen is a site preparation (pile-driving and drilling) contractor that is based in Mount Morris, Pennsylvania.

7.     Defendant ISG is a supplier and installer of high performance solutions for extreme duty applications in corrosive and abrasive areas that is based in Sumter, South Carolina.

8.     Defendants RNA, D&J, NexGen, and ISG are wholly owned subsidiaries of Rema.

9.     During 2020 and 2021, Rema also held at least 30 additional wholly owned subsidiaries.

10.     During 2020 and 2021, the Defendants and other subsidiaries, in the aggregate, far exceeded the size limitations of businesses eligible to participate in the Small Business Administration's ("SBA") programs, including the PPP loan program.  Accordingly, none of the Corporate Defendants were eligible to receive PPP loans.

SHN\702075.1

11.     Nonetheless, in or about 2020 and 2021, Defendants submitted SBA applications for PPP loans which falsely and fraudulently stated and certified that the applicants were eligible to participate in the PPP loan program.

12.     In reliance on Defendants' false statements and certifications, lenders extended PPP loans to the Corporate Defendants totaling over $8.8 million.

13.     In further reliance on Defendants' false statements and certifications, the lenders forgave the PPP loans, the reimbursement for which cost the United States approximately $8,818,400.

14.     Relator files this *qui tam* lawsuit to enable the Government to recover from Defendants the SBA-guaranteed, granted, and forgiven monies that were provided to these Defendants as the result of their wrongdoing, as well as to recover treble damages and/or penalties, and recover its reasonable attorneys' fees, costs and expenses.

## JURISDICTION, VENUE, AND SPECIAL REQUIREMENTS

15.     This Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, under 31 U.S.C. § 3729 of the False Claims Act, and under 28 U.S.C. § 1345, which provides the United States District Courts with original jurisdiction over all civil actions commenced by the United States of America.

16.     In addition, the FCA specifically confers jurisdiction upon the United States District Courts under 31 U.S.C. § 3732. This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because Defendants transact business in this District, and because the PPP Loan application was prepared in, executed in, and/or submitted to the SBA from this District.

SHN\702075.1

3

17.    Venue is proper in this District under 31 U.S.C. § 3732(a) because certain of the acts complained of herein occurred in this District.

18.    In accordance with 31 U.S.C. § 3730(b)(2), this Complaint has filed been filed *in camera* and will remain under seal for a period of at least 60 days and shall not be served on Defendants until the Court so orders.

19.    Pursuant to 31 U.S.C. § 3730(b)(2), the Relator must provide the Government with a copy of the Complaint and a written disclosure of substantially all material evidence and material information in its possession contemporaneous with the filing of the Complaint.  Relator has complied with this provision by serving copies of the Complaint and such disclosure upon the Honorable Philip R. Sellinger, United States Attorney for the District of New Jersey, and upon the Honorable Merrick B. Garland, Attorney General of the United States.

20.    Relator is not aware that the allegations in this Complaint have been publicly disclosed.  Further, to the extent Relator is aware of any public disclosures, this Complaint is not based on such public disclosures.  In any event, this Court has jurisdiction under 31 U.S.C. § 3730(e)(4) because the Relator is an "original source" since it has voluntarily provided its information to Government before filing this Complaint, and has knowledge, which is both direct and independent of, and materially adds to, any public disclosures to the extent they may exist.

## PARTIES

21.    Plaintiff/Relator Scissors LLC is a Delaware limited-liability company.  One or more individuals with direct knowledge of the facts alleged in this Complaint previously assigned Relator their rights to proceed with a *qui tam* lawsuit and obtain any benefit therefrom.

22.    Defendant Rema is a privately held corporation incorporated in the State of Delaware in 1985.  Rema's principal place of business is located at 300 Tice Boulevard, Suite 250

4

in Woodcliff Lake, New Jersey. Rema owns RNA and C&J as wholly owned subsidiaries. Rema is also the majority owner of the remaining Defendant subsidiaries, and is a foreign subsidiary of international corporation, REMA TIP TOP AG (the "Parent Company"), headquartered in Poing, Germany" and operating in over 160 countries with over 8,000 employees.

23.     Defendant RNA is a privately held corporation incorporated in the State of New Jersey in or about 1970 as a foreign corporation. RNA is the "largest foreign subsidiary" of the Parent Company. RNA has over 20 locations in North America with over 1,850 employees and has annual revenue exceeding $100 million. RNA's principal place of business is located at 300 Tice Boulevard, Suite 250 in Woodcliff Lake, New Jersey. RNA maintains a regional office in Madison, Georgia.

24.     Defendant C&J Welding & Construction, LLC is a privately held limited liability company incorporated in the Commonwealth of Pennsylvania in or about 2001. Its principal place of business is located at 322 Meadow Run Road in Mount Morris, Pennsylvania. C&J is a welding and equipment repair contractor.

25.     NexGen Industrial Services, Inc. is a privately held corporation incorporated in the Commonwealth of Pennsylvania in or about 2010. Its principal place of business is located at 322 Meadow Run Road in Mount Morris, Pennsylvania. NexGen is an oil, gas, mining, and pipeline construction services contractor.

26.     Industrial Services Group, Inc. d/b/a Universal Blastco ("ISG"), is a privately held limited liability company in the State of South Carolina in or about 2016. Its principal place of business is located at 318 Neeley Street in Sumter, South Carolina. ISG is a supplier and installer of high-performance solutions for extreme duty applications in corrosive and abrasive areas.

27.     Defendants Rema, RNA, and C&J were wholly owned and related subsidiaries of the Parent Company at the time the PPP loans were granted and forgiven.

28.     C&J owned 70% of NexGen and Rema owned 95% of ISG and four of its wholly owned subsidiaries at the time the PPP loans were granted and forgiven.

## GOVERNING LAWS, REGULATIONS, AND CODES OF CONDUCT

### The False Claims Act

29.     Originally enacted in 1863, the FCA was substantially amended in 1986 by the False Claims Amendments Act. The 1986 amendments enhanced the Government's ability to recover losses sustained as a result of fraud against the United States. Further clarifying amendments were adopted in May 2009 and March 2010.

30.     The FCA imposes liability upon any person who "knowingly presents, or causes to be presented [to the Government] a false or fraudulent claim for payment or approval"; or "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim"; or "knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(A), (B), (G). Any person found to have violated these provisions or conspired to have violated these provisions is liable for a civil penalty of at least $12,357.00 and up to $27,018.00 for each such false or fraudulent claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see* 88 FR 5776, Jan. 30, 2023).

31.     The FCA defines the terms "knowing" and "knowingly" to mean that a person (1) "has actual knowledge of the information"; (2) "acts in deliberate ignorance of the truth or falsity of the information"; or acts "in reckless disregard of the truth or falsity of the information." 31

6

U.S.C. § 3729(b)(1)(A). The statute provides that "no proof of specific intent to defraud" is required. 31 U.S.C. § 3729(b)(1)(B).

32.    The FCA also broadly defines a "claim" as one that includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that – (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government – (i) provides or has provided any portion of the money or property requested or demanded; or (ii) will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C. § 3729(b)(2)(A).

33.    The FCA empowers private persons having information regarding a false or fraudulent claim against the Government to bring an action on behalf of the Government and to share in any recovery. The complaint must be filed under seal without service on any Defendant. The complaint remains under seal while the Government conducts an investigation of the allegations in the complaint and determines whether to intervene in the action. 31 U.S.C. § 3730(b).

34.    In this action, and under well-established precedent, the false and fraudulent nature of Defendants' conduct is informed or measured by their violation of, or failure to comply with, certain statutes and regulations material to the submission of applications for government-subsidized and/or issued small business loans.

**The CARES Act Authorizes Paycheck Protection Program Loans and Economic Injury Disaster Loans and Grants**

35.    The Coronavirus Aid, Relief, and Economic Security ("CARES") Act (Pub. L. 116-136) (the "CARES Act" or the "Act") was enacted in March 2020 to provide emergency financial

7

assistance to individuals and businesses affected by the COVID-19 pandemic. The Act provided the federal Small Business Administration ("SBA") with funding and authority to modify existing loan programs and establish a new loan program to assist small businesses adversely affected by the pandemic.

36.    Section 1102 of the CARES Act authorized the SBA to guarantee up to $349 billion in forgivable 7(a) loans to small businesses for job retention and other expenses. This program was called the Paycheck Protection Program ("PPP"). In April 2020, Congress authorized over $300 billion to additionally fund the PPP. In June 2020, the Paycheck Protection Program Flexibility Act of 2020 (Pub. L. 116-142) was enacted which changed certain provisions of the PPP, including provisions relating to the maturity of loans, the deferral of loan payments, and loan forgiveness.

37.    Under the PPP, eligible small businesses could obtain *one* SBA-guaranteed PPP loan. Businesses were required to spend loan proceeds for employee compensation, rent or mortgage, and other specified expenses and, depending on their use of the loan proceeds, could qualify for loan forgiveness, up to the full amount of the loan.

38.    A business's eligibility as a "small business concern" depended on its particular industry, as defined under the North American Industry Classification System ("NAICS"). *See generally* 15 U.S.C. §§ 632(a), 636(a)(36) & 694(a)(9). Generally, commercial contracting companies were ineligible if they employed more than 500 full-time people, unless they were able to satisfy the SBA's alternative size standard, which is defined as (i) the maximum tangible net worth is not more than $15,000,000 and (ii) the average net income after Federal income taxes of the applicant for the two full fiscal years before the date of the application is not more than $5,000,000. *See* 13 C.F.R. Part 121, Subsector 238 (Specialty Trade Contractors). Site

Preparation Contractors' size standard was $19 million. *Id.* Electrical contractors' size standard was also $19 million. *Id.* "All Other Specialty Trade Contractors" likewise had a size standard of $19 million. *Id.*

39.    The SBA also considered whether a business had "affiliates" subject to mutual equity/stock ownership, overlapping management and/or control. *See id.* Subpart A, § 121.103. Businesses which are "affiliates" of each other under the SBA's definitions "may be treated as one party with such interests aggregated," including aggregating the businesses' annual receipts and number of employees. *See id.* §§ 121.103, 121.104 & 121.106.

40.    The SBA delegated authority to third-party lenders to underwrite and approve the PPP loans. To obtain a PPP loan, a qualifying business (through its authorized representative) signed and submitted a PPP loan application (SBA Form 2483) online through the lender's application platform. The PPP loan application required the business (through its authorized representative) to acknowledge the PPP program rules and make certain affirmative certifications to be eligible to obtain the PPP loan.

41.    Specifically with regard to these eligibility criteria, the loan application asked, "Is the Applicant or any owner[1] of the Applicant an owner of any other business, or have common management with, any other business?" If the answer was yes, the applicant was required to "list all such businesses and describe the relationship on a separate sheet[.]"

42.    The borrower's authorized representative was required to certify, among other things, that:

- The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the Small Business Administration (SBA) implementing the Paycheck Protection Program under Division A, Title I of the

---

[1] Defined by the SBA as an individual with a 20% or greater equity interest in the business.

Coronavirus Aid, Relief, and Economic Security Act (CARES Act) (the Paycheck Protection Program Rule).

- The Applicant (1) is an independent contractor, eligible self-employed individual, or sole proprietor or (2) employs no more than the greater of 500 or employees or, if applicable, the size standard in number of employees established by the SBA in 13 C.F.R. 121.201 for the Applicant's industry. * * *

- All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule.

43.    The borrower's authorized representative was also required to certify and initial, among other things, the business's average monthly payroll expenses and number of employees. This information was used to calculate the amount of money the business was eligible to be loaned. The applicant was also required to submit documentation showing payroll expenses, among other things.

44.    PPP loan applications were processed by participating financial institutions, which served as the lenders. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, were transmitted by the lender to the SBA in the course of processing the loan. SBA paid processing fees to lenders.

45.    Once a borrower submitted its PPP loan application (SBA Form 2483) to a Lender, the participating lender processed the PPP loan application. If a PPP loan application (SBA Form 2483) was approved by the participating lender, the lender submitted the application to SBA for an SBA loan number and after receiving that number it thereafter funded the PPP loan using its own monies, which were 100% guaranteed by the SBA.

46.    A borrower was required to use PPP loan proceeds only for certain permissible expenses: payroll costs, interest on mortgages, rent and utilities. The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these

10

expenses within a designated period (between eight and 24 weeks from receiving the proceeds) and uses at least 60% of the proceeds for payroll expenses. The applicant's authorized representative was accordingly required to certify that the funds would be used for permissible purposes, and that "if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud."

47.    The applicant's authorized representative was finally required to acknowledge and certify in good faith by initialing the following certification:

> that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000.

## SPECIFIC FRAUD ALLEGATIONS

### Rema and the Corporate Defendants in the Aggregate were too Large to be Eligible for PPP Loans

48.    In the aggregate, Rema, RNA, and Defendants were far too large both in the number of employees and in their tangible net worth to be eligible to receive PPP loans.

49.    With regard to employees, RNA states on its website that it employs more than 1,850 people. When combined with the other Defendants, the number of full-time equivalent employees of all the Defendants well exceeded 500 full-time employees.

50.    With regard to Defendants' financial size, their tangible net worth well exceeded the $15,000,000 maximum under the SBA's alternate size standards. Rema generated revenue from contracts with customers primarily in the United States. In 2021, Rema reported total revenue of approximately $100,000,000 for the United States alone. In 2022, Rema's reported revenue in

the United States was approximately $141,000,000. The aggregated tangible net worth of Rema, including all Defendant subsidiaries, exceeded $80 million in 2020 and $100 million in 2021, far exceeding the SBA's alternative business size standards.

51.    In or about April 2020, C&J applied for a PPP Loan in the amount of $388,400.

52.    Upon information and belief, an authorized representative of C&J prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that C&J was a small business concern eligible for participation in the PPP Loan Program, by failing to acknowledge that Rema, RNA, and Defendants were affiliates, and by omitting information concerning those companies' common ownership.

53.    Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information. Specifically, the representative falsely and fraudulently omitted to state that Rema, RNA, and Defendants were affiliated businesses that shared common ownership.

54.    The authorized representative further falsely certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledged the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

55.    The authorized representative executed, dated, and submitted the Form 2483-SD to United Bank ("UB"), a federally-insured financial institution and SBA participating lender.

SHN\702075.1

56.    On or about April 16, 2020, in reliance on C&J's materially false and fraudulent representations and certifications in the loan application, UB issued PPP loan # 2891247205 in the amount of $388,400 (the "C&J Loan").

57.    On or about July 7, 2021, the C&J Loan was forgiven in full, causing the United States to reimburse UB for the full amount, which cost the Government at least $388,400.

58.    In or about April 2020, ISG applied for a PPP Loan in the amount of $2,780,000.

59.    Upon information and belief, an authorized representative of ISG prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that ISG was a small business concern eligible for participation in the PPP Loan Program, by failing to acknowledge that Rema, RNA, and Defendants were affiliates, and by omitting information concerning those companies' common ownership.

60.    Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.  Specifically, the representative falsely and fraudulently omitted to state that ISG, Rema, RNA, and Defendants were affiliated businesses that shared common ownership.

61.    The authorized representative further falsely certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledged the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

62.    The authorized representative executed, dated, and submitted the Form 2483-SD to Synovus Bank ("SBank"), a federally-insured financial institution and SBA participating lender.

SHN\702075.1

63.     On or about April 27, 2020, in reliance on ISG's materially false and fraudulent representations and certifications in the loan application, SBank issued PPP loan # 5759347207 in the amount of $2,780,000 (the "First ISG Loan").

64.     On or about June 11, 2021, the First ISG Loan was forgiven in full, causing the United States to reimburse SBank for the full amount, which cost the Government at least $2,780,000.

65.     In or about February 2021, ISG applied for a second PPP Loan, in the amount of $2,000,000.

66.     Upon information and belief, an authorized representative of ISG prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that ISG was a small business concern eligible for participation in the PPP Loan Program, by failing to acknowledge that Rema, RNA, and Defendants were affiliates, and by omitting information concerning those companies' common ownership.

67.     Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information. Specifically, the representative falsely and fraudulently omitted to state that ISG, Rema, RNA, and Defendants were affiliated businesses that shared common ownership.

68.     The authorized representative further falsely certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledged the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

SHN\702075.1

69.     The authorized representative executed, dated, and submitted the Form 2483-SD to SBank.

70.     On or about February 12, 2021, in reliance on ISG's materially false and fraudulent representations and certifications in the loan application, SBank issued PPP loan # 7589288400 in the amount of $2,000,000 (the "Second ISG Loan").

71.     In or about November 2021, the Second ISG Loan was forgiven in full, causing the United States to reimburse SBank for the full, which cost the Government at least $2,000,000.

72.     In or about April 2020, NexGen applied for a PPP Loan in the amount of $1,990,000.

73.     Upon information and belief, an authorized representative of NexGen prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that NexGen was a small business concern eligible for participation in the PPP Loan Program, by failing to acknowledge that Rema, RNA, and Defendants were affiliates, and by omitting information concerning those companies' common ownership.

74.     Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.  Specifically, the representative falsely and fraudulently omitted to state that Rema, RNA, and Defendants were affiliated businesses that shared common ownership.

75.     The authorized representative further falsely certified "that the information provided in this application and the information provided in all supporting documents and forms

SHN\702075.1

is true and accurate in all material respects" and acknowledged the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

76.    The authorized representative executed, dated, and submitted the Form 2483-SD to Community Bank ("CB"), a federally-insured financial institution and SBA participating lender.

77.    On or about April 9, 2020, in reliance on NexGen's materially false and fraudulent representations and certifications in the loan application, CB issued PPP loan #9221207000 in the amount of $1,990,000 (the "First NexGen Loan").

78.    In or about July 2021, the First NexGen Loan was forgiven in full, causing the United States to reimburse CB for the full amount, which cost the Government at least $1,990,000.

79.    In or about April 2021, NexGen applied for a second PPP Loan in the amount of $1,660,000.

80.    Upon information and belief, an authorized representative of NexGen prepared SBA Form 2483-SD, in which the representative falsely and fraudulently certified that NexGen was a small business concern eligible for participation in the PPP Loan Program, by failing to acknowledge that Rema, RNA, and Defendants were affiliates, and by omitting information concerning those companies' common ownership.

81.    Upon information and belief, the representative falsely and fraudulently answered "No" to the question, "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?" and/or failed to provide a complete list of this required information.   Specifically, the representative falsely and fraudulently omitted to state that Rema, RNA, and the other Corporate Defendants were affiliated businesses that shared common ownership.

SHN\702075.1

82.    The authorized representative further falsely certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects" and acknowledged the federal criminal penalties attendant to "knowingly making a false statement to obtain a guaranteed loan from SBA."

83.    The authorized representative executed, dated, and submitted the Form 2483-SD to CB.

84.    On or about April 9, 2020, in reliance on NexGen's materially false and fraudulent representations and certifications in the loan application, CB issued PPP loan # 7635508810 in the amount of $1,660,000 (the "Second NexGen Loan").

85.    In or about May 2022, the Second NexGen Loan was forgiven in full, causing the United States to reimburse CB for the full amount, which cost the Government at least $1,660,000. *Id.*

## THE GOVERNMENT HAS BEEN DAMAGED AS A RESULT OF DEFENDANT'S CONDUCT

86.    Defendants' materially false statements have caused the federal government to be defrauded of taxpayer funds in the approximate amount of $8,818,400.

**THIS SPACE INTENTIONALLY LEFT BLANK**

SHN\702075.1

## CLAIMS FOR RELIEF

### COUNT I

False Claims Act:
Presenting or Causing to be Presented False and Fraudulent Claims
31 U.S.C. § 3729(a)(1)(A)

87.    Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

88.    As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, Defendants have knowingly presented, and caused to be presented, false or fraudulent claims for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

### COUNT II

False Claims Act:
Making or Using False
Records or Statement to Cause Claims to be Paid
31 U.S.C. § 3729(a)(1)(B)

89.    Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

90.    As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, Defendants have knowingly made, used, or caused to be made or used, false records or statements – *i.e.*, the false representations made or caused to be made by Defendants – material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B).

### COUNT III

False Claims Act: Conspiracy
31 U.S.C. § 3729(a)(1)(C)

91.    Relator repeats the allegations contained in the above paragraphs as if fully set forth herein.

18

SHN\702075.1

92.     As more particularly set forth in the foregoing paragraphs, by virtue of the acts alleged herein, Defendants conspired with others to make or present false or fraudulent claims and performed one or more overt acts to affect the submission and cause the payment of false or fraudulent claims.

### DEMANDS FOR RELIEF

WHEREFORE, Relator, on behalf of the United States Government, demands judgment against Defendants, ordering that:

A.     That Defendants be ordered to cease and desist from submitting any more false claims, or further violating 31 U.S.C. § 3729, *et seq.*;

B.     That judgment be entered in Relator's favor and against Defendants in the amount of each and every false or fraudulent claim, multiplied as provided for in 31 U.S.C. § 3729(a), plus a civil penalty of not less than $12,357.00 or more than $27,018.00 per claim as provided by 31 U.S.C. § 3729(a), 20 CFR Part 356 and 28 CFR Part 85 (*see* 88 FR 5776, Jan. 30, 2023), to the extent such multiplied penalties shall fairly compensate the United States of America for losses resulting from the various schemes undertaken by Defendants, together with penalties for specific claims to be identified at trial after full discovery;

C.     That Defendants be ordered to disgorge all sums by which they have been enriched unjustly by their wrongful conduct;

D.     That judgment be granted for Relator against Defendants for all costs, including, but not limited to, court costs, expert fees and all attorneys' fees incurred by Relator in the prosecution of this suit; and

E.     That Relator be granted such other and further relief as the Court deems just and proper.

19

**TRIAL BY JURY**

Relator hereby demands a trial by jury as to all issues.


DATE:   September 29, 2023


                                          SPIRO HARRISON & NELSON

                                          _____
                                          Eric H. Jaso
                                          363 Bloomfield Avenue
                                          Suite 2C
                                          Montclair, New Jersey 07042
                                          (973) 232-0881
                                          ejaso@shnlegal.com

                                          PORZIO BROMBERG & NEWMAN
                                          Charles J. Stoia
                                          100 Southgate Parkway
                                          Morristown, NJ 07962-1997
                                          (973) 538-4006
                                          cjstoia@pbnlaw.com

                                          KLINGEMAN CERIMELE
                                          Henry Klingeman
                                          100 Southgate Parkway
                                          Suite 150
                                          Morristown, NJ 07960
                                          (973) 714-3474
                                          henry@klingemanlaw.com

                                          *Attorneys for Relator*

SHN\702075.1